UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BETHANY M. HIGHT,            )
                             )
           Plaintiff,        )    Case No. 1:08-cv-1062
                             )
v.                           )    Honorable Robert Holmes Bell
                             )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
                             )    **REPORT AND RECOMMENDATION**
           Defendant.        )
_____)

        This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff[1] was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. The Social Security Administration considered her application for DIB benefits as having been filed on December 9, 2005, under the protective filing doctrine.[2] Plaintiff alleged a September 27, 1997 onset of disability. (A.R. 54-55). Plaintiff was 32-years-old as of her alleged onset of disability, and was 37-years-old on December 31, 2002, when her disability insured status expired. Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was

---

      [1]The complaint (docket # 1) incorrectly lists plaintiff's name as Bethany A. Hight. The administrative record shows that her name is Bethany M. Hight. Accordingly, the case caption has been amended.

      [2]Plaintiff did not actually file her application for DIB benefits until May 10, 2007. (A.R. 54). "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Kimmel v. Astrue*, No. 4:09-cv-44, 2009 WL 1743750, at *1 n.2 (M.D. Pa. June 17, 2009).

disabled on or before December 31, 2002. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

On March 17, 2008, plaintiff filed her application for SSI benefits, alleging a September 27, 1997 onset of disability. (A.R. 235-39). SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, April 2008 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff's claims for DIB and SSI benefits were denied on initial review. On April 7, 2008, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 244-93). On May 27, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-24). On September 24, 2008, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

On November 12, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. The issues raised by plaintiff are as follows:

1. The ALJ committed reversible error "by not properly considering" the opinion of a consulting psychologist; and

2. The ALJ committed reversible error "by failing to address Listing 12.02 in his analysis of the case."

(Plf. Brief at 9, docket # 7). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**<u>Standard of Review</u>**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v.*

*Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of September 27, 1997, through December 31, 2002, but not thereafter. (A.R. 17). Plaintiff had not engaged in substantial gainful activity on or after September 27, 1997. (A.R. 17). The ALJ found that plaintiff had the following severe impairments: "a 1997 episode of dysphasia and cognitive disorder." (A.R. 17). The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment, including listing 12.02:

> The claimant's cognitive disorder has been assessed in accordance with Listing 12.02. This listing provides for organic mental disorders that are psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests must demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities. The required level of severity for these disorders i[s] met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked

> limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> The claimant's mental impairment(s), considered singly and in combination do not meet or medically equal the criteria of listing 12.02.
>
> In activities of daily living, the claimant has mild restriction as previously established.
>
> In social functioning, the claimant has mild difficulties as previously established.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Her daily activities show she is able to drive, cook, clean house, shop, read, watch children, and groom (Exhibit 7E)[A.R. 116-20]. However, she testified she can no longer multitask. She is able to follow directions provided they are given one at a time. Mr. Hight testified that she has to reread things and her typing is slower than before the stroke. The undersigned observed the claimant while testifying and noted her answers were direct and pertinent. She did not require repeated questioning or additional explanation of hearing proceedings.
>
> The claimant has not experienced episodes of decompensation. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied. There is no indication of the presence of "C" criteria.

(A.R. 19-20). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to the performance of unskilled work that does not require multiple tasks.

(A.R. 20). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> The medical evidence has not supported the claimant's assertion that she is unable to work on a consistent and competitive basis. Rather, the evidence shows that the claimant stopped working in 1997 to have a baby, but then had a stroke. Her physical symptoms were ameliorated less than one year later. The clinical tests may indicate that she lost some ability to perform complex tasks[,] but there is nothing to show she is not capable of performing unskilled work. While the State Agency consultants could not find evidence that any

impairment existed, the undersigned has given the claimant the benefit of a doubt and concludes that her stroke residuals limit her to the performance of unskilled jobs that do not require multitasking.

(A.R. 22). The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis because she was capable of performing her past relevant work.[3] (A.R. 22).

Alternatively, the ALJ found that plaintiff was not disabled at Step 5. Plaintiff was 32-years-old on the date of her alleged onset of disability, 37-years-old when her disability insured status expired, and 42-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 22). Plaintiff has more than a high school education and is able to communicate in English. (A.R. 22). The transferability of jobs skills was not material to a disability determination. (A.R. 22). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 46,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 285-87). The ALJ held that this constituted a significant number of jobs and found that plaintiff was not disabled. (A.R. 15-24).

---

[3]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

**1.**

Plaintiff argues that the ALJ committed reversible error "by not properly considering" the opinion of a consulting psychologist, Ronald Marshall:

> Plaintiff's attorney at the hearing level did send her to Ronald Marshall, Ph.D., a psychologist, and he performed a full workup to determine what post-stroke residuals Plaintiff still had. This is a file that is very limited in terms of evidence and, thus, Dr. Marshall's examination is extremely important in determining whether Plaintiff still suffered from significant impairments. What is clear here, however, is that the ALJ simply rejected that examination out of hand. Perhaps the most noteworthy proof of this was his amazing question to the vocational expert (who was also a psychologist) in which he asked if there were "any pills" that the Plaintiff could take for her brain damage (291). That question illustrates his fundamental misunderstanding of brain impairments; moreover, that remark is emblematic of the way the ALJ interpreted the evidence in this case.

(Plf. Brief at 9; *see* Reply Brief at 1-3, docket # 10). Plaintiff's argument is meritless.

Plaintiff presented extremely limited medical evidence that tended to support her claims for DIB and SSI benefits. She testified that she suffered a stroke in September 1997, about two months after giving birth to her first child. She stated that for approximately one month she lost her ability to speak and suffered from some numbness. (A.R. 255). Plaintiff's September 24, 1997 carotid duplex sonogram returned normal results. (A.R. 188-89). A September 27, 1997 MRA of intracranial circulation indicated that her distal left internal carotid artery was not well visualized, which was consistent with an occlusion or slow flow. (A.R. 186).

On June 5, 1988, Kannen Paramesh, M.D., examined plaintiff. (A.R. 177-78). Dr. Paramesh found that plaintiff's mental status was within normal limits. (A.R. 178). She was able to "read and write without problems." Her speech was fluent except for occasional word-finding problems. Plaintiff's strength in her upper and lower extremities were normal and her sensory examination was normal. Dr. Paramesh diagnosed plaintiff's condition as '[d]ysphagia, recovered."

(A.R. 178). On April 24, 2001, Dr. Paramesh observed that plaintiff's memory was "normal for recent and remote events." Her speech "was fluent, [with] no dysphasia or dysarthria." (A.R. 175).

On March 22, 2008, Psychologist Marshall interviewed plaintiff on a referral from plaintiff's attorney. (A.R. 202-09). Plaintiff was dressed appropriately and was responsive to questions. (A.R. 204). She was oriented as to time, place, and person, and knew that she was at the psychologist's office "for an evaluation for disability." (A.R. 204). Her verbal fluency was intact and her fund of information was normal for her age and educational level. (A.R. 204). She reported that a typical day involved getting up with her two children and preparing meals. (A.R. 202, 205). She performed some household chores, but her main activity was watching television. Plaintiff stated that she took two-hour naps in the afternoon, watched more television, and went to bed at around 10:00 p.m. (A.R. 205). The scores she achieved on the tests Psychologist Marshall administered generally placed her in the average or low average range. (A.R. 211). She did not have a history of hospitalization for any mental impairment. She stated that she was depressed and that she had taken Zoloft. (A.R. 203). Psychologist Marshall did not record any details regarding the physician who had prescribed this medication, when it had been prescribed, the dosage, or its effectiveness. Coumadin, a blood thinner, was the only medication plaintiff was taking in March 2008. (A.R. 203). Psychologist Marshall offered the following diagnosis:

    Axis I:       Cognitive Disorder NOS
                     Depressive NOS
    Axis II:      Deferred
    Axis III:     History of having a stroke
    Axis IV:     [U]nable to work
    Axis V:      GAF=50 (current), 50 (past year)

(214). Near the end of his report, Psychologist Marshall gave his opinion regarding plaintiff's maximum work capability:

> **Maximum Work Capability**: Ms. Hight['s] intellectual ability declined by more than eleven points due to her stroke. Her full scale IQ is average, her working memory is low average, and her processing speed is borderline. Her working memory indicates she may experience difficulty holding information to perform a specific task. Her abilities with working memory may make processing of complex information more time consuming and may drain her mental energies more quickly. Her relative weakness in processing speed may make comprehending novel information more time consuming for her.
>
> Not only will Ms. Hight have difficulty with complex tasks, her word finding difficulty and difficulty understanding others will further affect her ability to learn new tasks and to follow instructions without having them repeated. In addition, her need to take daily naps due to being tired further affects her ability to perform tasks at an adequate pace without interruptions. Her social discomfort due to her word finding difficulties and difficulty understanding others significantly affects her ability to work with others, especially large groups. Her depression reflects her grieving the loss of her abilities.

(A.R. 215). Further, he signed a "Medical Opinion Re: Ability to Do Work Related Activities (Mental)" (A.R 216-19) in which, among other things, he offered his opinions that plaintiff would be likely to be absent from work about three days per month (A.R. 219) and would have a poor ability or no ability to perform at a consistent pace without an unreasonable number and length of rest periods (A.R. 218). Psychologist Marshall did not explain what evidence supported these conclusions. (A.R. 219).

The ALJ found that the consulting psychologist's opinions, based on a single examination conducted more than a decade after plaintiff's alleged onset of disability and more than five years after her date last disability insured, were entitled to very little weight:

> The claimant was psychologically evaluated in March 2008. She was cooperative and responsive. Her speech was slow but no loose associations or irrelevant communications were noted. Her thought content was logical, clear, and appropriate. She was oriented times three. She had some difficulty with immediate and recent recall, and no difficulty with remote memory. Her fund of information appeared normal for her age and educational level.

-9-

> She had adequate insight. Her judgment was intact. She reported getting up with her children, preparing their meals, doing chores, watching television, taking naps, and watching more television. The examiner opined the claimant has a cognitive disorder, not otherwise specified (NOS), depression, and a history of having a stroke. The claimant was assigned a Global Assessment of Functioning (GAF) of 50 indicating that she has serious impairment in social, occupational, or school functioning (*DSM-IV* pg. 32). Notably, a GAF of 51 would indicate only moderate impairment. Without a supporting basis for his opinion, the examiner stated that the claimant had declined 11 points in her intellectual ability. He stated that she may experience difficulty in holding information to perform a specific task. Her difficulties with working memory may make processing of complex information more time consuming and drain her mental energies more quickly. The claimant may also require daily naps. She may be uncomfortable around large groups. Her depression is a grieving loss of her abilities, nevertheless, she is able to perform basic self-care, do chores, and handle finances. She was given good to fair ratings with the exceptions of maintaining regular attendance (missing about three times a month) and performing at a consistent pace (Exhibit 13) [A.R. 202-15]. Since Dr. Marshall [did] not know the claimant prior to this evaluation, it is difficult to accept his estimate of how much time the claimant would miss work and his opinion that she is incapable of performing at a consistent pace. Further, since this is the only opinion in the file that implies that the claimant is disabled, the undersigned is not persuaded to give significant weight to this opinion.

(A.R. 21-22). I find no error.

Psychologist Marshall was a consulting psychologist who met with plaintiff on one occasion. He is therefore not entitled to the deference accorded to the findings of treating physicians. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner, and even a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). "[N]o special significance" is attached to a physician's opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Allen v. Commissioner*, 561 F.3d

646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390. Thus, Psychologist Marshall's opinions on the issues reserved to the Commissioner were not entitled to any special significance.

The ALJ was not required to give any weight to the consulting psychologist's GAF score. *Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment:

> [GAF score is] a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Commissioner*, 572 F.3d at 276. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n. 7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational

functioning." *Kornecky*, 167 F. App'x at 511. Likewise, the consulting psychologist's unexplained estimate of how often a claimant who was not working would likely be absent from work if she had a job, was his subjective opinion rather than a medical opinion. It was not entitled to any particular weight. The ALJ did not misinterpret the evidence. His decision to give little weight to the consulting psychologist's opinions is supported by more than substantial evidence.

**2.**

Plaintiff's argument that the ALJ "committed reversible error by failing to address Listing 12.02 in the analysis of the case" (Plf. Brief at 9) cannot withstand scrutiny. It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.' [20 C.F.R.] § 404.1525(a). In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009). "Listing 12 addresses nine specific mental disorders and begins with a set of introductory instructions." *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009). The listing's introductory

instructions "are no less mandatory" than the individual listings. *Id.*; *see* 20 C.F.R. § 404.1525(c)(2). The introduction states, "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in listings 12.02, 12.03, 12.04, and 12.06." "Under Listing 12.02, a claimant must first demonstrate psychological or behavioral abnormalities, and must then demonstrate the required level of severity." *Taylor v. Barnhart*, 189 F. App'x 557, 563 (7th Cir. 2006).

Plaintiff's argument that the ALJ's opinion should have included a discussion of her loss of IQ points under part A(7) of listing 12.02 does not provide a basis for disturbing the Commissioner's decision. She must satisfy all the requirements of the listing. The ALJ addressed at length why plaintiff did not meet the requirements of listing 12.02's parts B and C (A.R. 19-20), and his findings are supported by substantial evidence. Plaintiff's brief ignores the ALJ's part B and C findings. Assuming *arguendo* that the ALJ committed error when he failed to discuss part A(7), it is patent that the error was harmless. *See Rabbers*, 582 F.3d at 657-61. A claimant cannot satisfy all the requirements of listing 12.02 without meeting the requirements of parts B or C. *See Pascoe v. Commissioner*, 137 F. App'x 828, 844 (6th Cir. 2005).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: February 17, 2010          /s/ Joseph G. Scoville
                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).